<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                              :
JANET BARTOW, Administrator and Ad            :
Prosequendum of the Estate of Tegan Bartow,   :
and JANET BARTOW, Individually,               :
                                              :          Civil Action No. 09-2061  (JAG)
                                              :
            Plaintiff,                        :                  **OPINION**
                                              :
                v.                            :
                                              :
                                              :
HOMESITE INSURANCE COMPANY, INC.,:
                                              :
                                              :
            Defendant.                        :
_____:


<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on motion by defendant, Homesite Insurance

Company, Inc. ("Homesite"), to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), or, alternatively,

for summary judgment, pursuant to FED. R. CIV. P. 56(c), against plaintiff, Janet Bartow

("Plaintiff").  For the reasons set forth below, Homesite's motion for summary judgment is

granted.

**INTRODUCTION**

This case involves an insurance coverage dispute concerning the application of an

automobile exclusion in a homeowner's insurance policy.  A toddler, Tegan Bartow ("Tegan"),

was attending a family event at his home with his parents when he was struck and killed by a

sports utility vehicle ("SUV") owned and driven by his father, Joseph Bartow ("Mr. Bartow"). Plaintiff Janet Bartow, Tegan's mother, initiated suit against Mr. Bartow.  In the resulting litigation and settlement, Mr. Bartow's homeowner's insurance carrier, Homesite, did not extend a defense, or liability coverage.

Resolution of the motion turns on whether Mr. Bartow's failure to look after his son is an independent cause of Tegan's death.  Ultimately, the issue is whether the insurer may invoke the insurance policy's automobile exclusion to deny the insured a defense and indemnification.

Plaintiff claims that Homesite breached the insurance contract and a fiduciary duty to the insured by wrongfully disclaiming a duty to defend and to indemnify Mr. Bartow, or to provide a defense with a reservation of rights.  She attempts to show that the homeowner's insurance policy provides liability coverage for the accident because Mr. Bartow's failure to supervise Tegan was a discrete act that occurred before Mr. Bartow entered the vehicle and, thus, is, purportedly, a concurrent cause of Tegan's death.

Homesite contends that the automobile exclusion applies because (1) Mr. Bartow's "use" of a vehicle is the proximate cause of the accident and the exclusion is unambiguous; and (2) Mr. Bartow's failure to supervise Tegan did not independently cause the accidental death.  This Court agrees.

## FACTUAL BACKGROUND

On June 24, 2009, Tegan, a child of approximately three years old, was killed when he was struck by an SUV.  (Complaint ("Compl.") ¶¶ 1-3.)  The SUV was owned and driven by his father, Mr. Bartow.  (Id. ¶ 7.)  On that date, Plaintiff and Mr. Bartow attended a family function,

with Tegan, at their home.[1]  (Id. ¶ 3.)  Tegan was on the property unsupervised when Mr. Bartow

attempted to move his SUV.  (Id. ¶ 7.)  The SUV struck Tegan, and he died.  (Id. ¶ 7.)  Plaintiff

was appointed the administrator of Tegan's estate.  (Id. ¶ 8.)  Plaintiff sued Mr. Bartow in state

court, in a matter entitled, Janet Bartow v. Jospeh Bartow, Superior Court of New Jersey, Law

Division, Morris County, Docket No. MRS-001712-07 ("the State Action").  ( Id. ¶ 9.)

        In this underlying action, Plaintiff asserts a negligent supervision theory against Mr.

Bartow.[2]  (See generally Certification of Barry M. Packin Ex. A (State Action complaint).)

Plaintiff's essential allegations, in the State Action complaint, are as follows: (1) "On the

aforesaid date, [Mr. Bartow], was with Tegan Bartow and was moving a Ford Expedition SUV";

(2) "At that time, [Mr. Bartow], was responsible for the care and supervision of Tegan Bartow";

(3) "[Mr. Bartow] left Tegan Bartow unattended and unsupervised outside the SUV while he

moved the SUV"; (4) "While moving the SUV, [Mr. Bartow] struck Tegan Bartow thereby

causing his death"; (5) "Defendant, [Mr. Bartow], was negligent, careless and reckless in the

supervision of Tegan Bartow"; and (6) "As a direct and proximate result of said negligence,

carelessness and recklessness, Tegan Bartow was killed."  (Id. ¶¶ 4-7, 10, 11.)

        Mr. Bartow is an insured on a homeowner's insurance policy from Homesite, policy

number 30152596 ("the Homesite policy").  (Compl. ¶ 11.)  Plaintiff argues that claims asserting

a negligent supervision theory fall within the purview of the policy, and that Homesite does not

deny that it would be obligated to provide liability coverage for a negligent supervision claim.

---

        [1]  All facts are taken from the instant complaint ("Complaint").  The facts are not in
dispute unless otherwise indicated.

        [2] In the State Action, Plaintiff brings wrongful death and survivorship claims against Mr.
Bartow.

The section on coverage for personal liability in the Homesite policy provides, in relevant part, that "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies," the insurer will "[p]ay up to [the] limit of liability for the damages for which the 'insured' is legally liable" and "provide a defense at [the insurer's] expense . . . ."  (Defendant's Brief in Support of Motion to Dismiss, or, alternatively, Motion for Summary Judgment ("Def.'s. Br. in Support") Ex. B (Homesite policy).)

An exclusion under the policy provides that personal liability coverage does not apply to "bodily injury . . . arising out of the ownership, maintenance, use, loading or unloading of motor vehicles . . . owned or operated by . . . an insured."[3]  Id.

Mr. Bartow's counsel in the State Action sent two letters to Homesite, the first, notifying Homesite of the State action and requesting defense and indemnification; and the second, notifying Homesite of the parties' intention to settle the State Action.  (Compl. ¶ 12; Certification of Barry M. Packin Ex. B.)  In response to Mr. Bartow's request that Homesite defend and

---

[3]     The provision states in pertinent part:

Section II- Exclusions

1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":

f.     Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured". . .

(Def.'s Br. in Support Ex. B (Homesite Policy).)

indemnify him, or provide a defense with a reservation of rights, Homesite refused to extend a defense.  (Compl. ¶¶ 12-13.)

Plaintiff and Mr. Bartow settled the State action for $350,000.  (Id. ¶ 14.)  Pursuant to the settlement agreement between the parents, Mr. Bartow assigned, to Plaintiff, his purported rights against Homesite.  (Certification of Barry M. Packin Ex. C (settlement agreement  ¶ 2).)  Plaintiff agreed to pursue recovery of the settlement amount from Homesite, and not from Mr. Bartow's personal assets.  (Id. ¶ 3.)  Homesite has notified this Court, in its reply letter brief, that Plaintiff's counsel mentioned to defense counsel that Plaintiff received a sum uncertain from the insured's automobile insurance carrier.  (Defendant's Reply Letter 1.)  Plaintiff has not indicated in her submissions whether the insured carried automobile insurance for the SUV.

On March 25, 2009, Plaintiff filed the instant complaint ("Complaint") in the Superior Court of New Jersey, Law Division, Morris County.  Homesite removed the action, on May 1, 2009, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.[4]  Plaintiff's five-count Complaint asserts claims for breach of contractual and fiduciary obligations to provide a defense and indemnification, or a defense with a reservation of rights (First Count and Second Count), and for bad faith denial of coverage (Third Count).[5]

---

[4] Homesite is a corporation incorporated in Massachusetts.  (Docket Entry No. 1 Notice of Removal.)  Plaintiff and Mr. Bartow reside in New Jersey.  (Compl. ¶ 1-2.)  The amount in controversy exceeds $75,000, the jurisdictional amount.

[5] The remaining counts in the Complaint set forth Plaintiff's principal requests for relief: Fourth Count (enforcement of the settlement agreement) and Fifth Count (declaratory judgment that Homesite is liable for the settlement amount).

**LEGAL STANDARDS**

**A.  Summary Judgment**[6]

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

---

[6]   This Court addresses Homesite's motion as one for summary judgment, rather than as one to dismiss for failure to state a claim.  Plaintiff admits that Homesite has not argued that Plaintiffs' allegations are in any way deficient as stated in the Complaint.  Moreover, both parties discuss the duty to defend and to indemnify within the context of a grant or denial of summary judgment.

Plaintiff, however, contends that a grant of summary judgment would be premature because the Plaintiff has not been afforded an ample period of time for discovery with respect to the Complaint's third count—bad faith refusal to defend the insured.  In addition, Plaintiff brings to the Court's attention Homesite's failure to include a "Statement of Undisputed Material Facts," in compliance with Local Civil Rule 56.1.  Plaintiff does not argue, and this Court does not find, that fact finding is pertinent to the construction of the insurance contract, or that there are any material facts in dispute as to the existence of a duty to defend.  Homesite has not disputed, or even contradicted, any of Plaintiff's factual allegations for purposes of its motion for summary judgment.  Under the circumstances, the failure to submit a Rule 56.1 Statement of Undisputed Material Facts is not fatal to Homesite's motion.

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331).  See also U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa, 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).)  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to

find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

"Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Celotex, 477 U.S. at 322-23.

## B.  General Principles of Insurance Policy Construction

"It is evident that the court should give the words of [an insurance] policy 'their plain,

ordinary meaning.'" Sahli v. Woodbine Bd. of Educ., 938 A.2d 923, 930 (N.J. 2008) (quoting

Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001).  "If the words of a policy are

clear, the policy should be interpreted as written." Iorio ex rel. Iorio v. Simone, 773 A.2d 722,

725 (N.J. Super. Ct. App. Div. 2001), aff'd 790 A.2d 157 (N.J. 2002); Royal Ins. Co. v. Rutgers

Cas. Ins. Co., 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994).  "So long as the language is

clear, unambiguous and not violative of public policy," a court must "not indulge in a strained

construction to impose coverage."  Iorio, 773 A.2d at 725 (citing Longobardi v. Chubb Ins. Co.

of New Jersey, 582 A.2d 1257, 1260 (N.J. 1990)).  Courts, however, "may 'not write for an

insured a better policy of insurance than the one he purchased.'" Id. (quoting Walker Rogge, Inc.

v. Chelsea Title & Guar. Co., 562 A.2d 208, 214 (N.J. 1989)).

Because an insurance contract is a contract of adhesion, however, the court will construe

any ambiguity in the language to honor the objectively reasonable expectations of the insured.

Zacarias, 775 A.2d at 1264; Meier v. N.J Life Ins. Co., 503 A.2d 862, 869 (N.J. 1986).

Moreover, "fair doubt," as to the fit between the allegations of the [underlying] complaint against the insured and the extent of the policy coverage, is resolved in the insured's favor.  Sahli, 938 A.2d at 930; Danek v. Hommer, 100 A.2d 198, 203 (N.J. Super. Ct. App. Div. 1953), aff'd  per curiam, 105 A.2d 677 (N.J. 1954); Berger v. United States Fidelity & Guar., 834 F.2d 1154, 1162 (3d Cir. 1987) (stating that New Jersey courts "favor[] coverage where an ambiguity exists"). "Consistent with that approach, 'policy exclusions must be narrowly construed[,] and the burden is on the insurer to bring the case within the exclusion.'"  Sahli, 938 A.2d at 930 (citing Princeton Ins. Co v. Chunmuang, 698 A.2d 9, 16-17 (N.J. 1997)); American Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998).  "[T]his does not mean that any far fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." Cobra Products Inc. v. Federal Ins. Co., 722 A.2d 545, 549 (N.J. Super. Ct. App. Div. 1998).

To determine a "genuine ambiguity," a court looks to the "*objectively* reasonable expectation of the insured."  Weedo v. Stone E-Brick, Inc., 405 A.2d 788, 795 (N.J. 1979) (emphasis added).  This test is applied "where the phrasing of the policy is so confusing that the *average* policy holder cannot make out the boundaries of coverage.  Id. (emphasis added).

**C.  Duty to Defend**

Under New Jersey law, "[t]he insurer has a duty to defend the insured 'when the [underlying] complaint [against the insured] states a claim that constitutes a risk.'"  Sahli, 938 A.2d at 930 (quoting Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1259 (N.J. 1992)); W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 970 A.2d 382, 391 (N.J. Super. Ct. App. Div. 2009).  In order "[t]o make that determination, the complaint 'is placed alongside the policy and the test is whether the allegations of that complaint, upon its face, fall within the risk insured

against.'"  W9/PHC Real Estate LP, 970 A.2d at 391 (quoting Ohio Casualty Ins. Co. v. Flanagin, 210 A.2d 221, 225 (N.J. 1965)).  "The *nature* of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer, determines whether the insurer is obliged to defend."  Ohio Casualty, 210 A.2d at 225 (emphasis added).

A duty to defend may exist regardless of whether an insurer may be held liable "because the duty to defend is broader than a duty to indemnify."  W9/PHC Real Estate LP, 970 A.2d at 391 (citing Voorhees, 607 A.2d at 1259).  "Further, if multiple alternative causes of action, are alleged in the complaint, the insurer's duty to defend continues until every covered claim is eliminated."  Sahli, 938 A.2d at 930 (citing Voorhees, 607 A.2d at 1259); Conduit & Found. Corp. v. Hartford Cas. Ins. Co., 746 A.2d 1053, 1058 (N.J. Super. Ct. App. Div. 2000) (stating that the duty arises even if only one of the claims in the underlying complaint potentially comes within the scope of the policy's coverage).

## ANALYSIS

Plaintiff contends that the automobile accident does not trigger the automobile exclusion in the Homesite policy because (1) the underlying claim, in the State Action, for negligent supervision is covered under the policy, and (2) Mr. Bartow's failure to supervise Tegan was a concurrent cause of Tegan's death.  Plaintiff further contends that "the act of negligent supervision was 'completed' before Mr. Bartow entered his motor vehicle and the actual act of negligent supervision was independent from the operation of that motor vehicle."  (Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss or for Summary Judgment ("Pl.'s Op. Br.") 12.)  This Court finds Plaintiff's arguments unpersuasive.

This Court must compare the language utilized in the Homesite policy automobile

10

exclusion to the allegations on the face of the State Action complaint.  The automobile exclusion states that coverage is not available for accidents "arising out of" the insured's ownership or use of a motor vehicle.  "Generally the 'arising out of' language in automobile and homeowner's policies is 'mutually exclusive and that, as used in the homeowner's policy, is specifically designed to exclude the coverage provided under language in the standard family automobile policy for injuries arising out of the use of the motor vehicle insured thereunder." Owens v. Prudential Property & Cas. Ins. Co. of New Jersey, 763 A.2d 792, 794 (N.J. Super. Ct. App. Div. 2000) (quoting Westchester Fire Ins. Co. v. Continental Ins. Co., 312 A.2d 664, 671 (N.J. Super. Ct. App. Div. 1973), aff'd, 319 A.2d 732 (N.J. 1974); Conduit, 746 A.2d at 1058.

New Jersey courts have construed automobile exclusions similar to the one here in a "broad and comprehensive sense," see Owens, 763 A.2d at 794 (citing Westchester Fire, 312 A.2d 664, 669), such that the phrase "arising out of" is satisfied if the facts indicate that the accident "originates from" or "grew out of" or "flowed from" the use of an automobile.  Conduit, 746 A.2d at 1058-59 (citing Allstate Insurance Co. v. Moraca, 581 A.2d 510, 514 n.1 (N.J. Super. Ct. App. Div. 1990).

In the State Action, Plaintiff put forth a negligent supervision theory based on Mr. Bartow's failure to look after his son at the time that Mr. Bartow moved the SUV.  The underlying complaint states that "[Mr. Bartow] left Tegan Bartow unattended and unsupervised outside the SUV while he moved the SUV."  (State Action complaint ¶ 6.)  The failure to monitor the toddler's whereabouts is inextricably tied to Mr. Bartow's manipulation of the vehicle.  It explains what activity Mr. Bartow was engaged in during the time period in which he was responsible for observing and guarding the child's welfare, and how the child came to be

11

injured by the vehicle.  Mr. Bartow failed to supervise Tegan, and Tegan was able to enter the

sphere of a moving vehicle, and that moving vehicle caused Tegan's death.

On the basis of these facts, this Court cannot fathom how the automobile exclusion

applied to the instant accident may be considered ambiguous.  Construing the terms of

Homesite's policy in light of the allegations contained on the face of the underlying complaint

indicates that the accident "arose out of" the use of the insured's motor vehicle.  The automobile

is both an essential fact of the accident, and an essential element of the theory of liability.  In the

absence of ambiguity, this Court does not find any bar to the application of the automobile

exclusion to the accident causing Tegan's death.

Plaintiff attempts, through a somewhat strained interpretation of the facts, to show that

application of a dual causation rule is proper.  Plaintiff relies heavily on Salem Group v. Oliver,

607 A.2d 138 (N.J. 1992), for the proposition that, where there are concurrent proximate causes

of an injury following a vehicular accident, and one of the separate causes of action, alleged in

the underlying complaint, would be covered under the policy, the insurer will be held to its duty

to defend the insured, notwithstanding the policy's automobile exclusion.[7]  Plaintiff's reliance on

---

[7]  Salem Group, as the New Jersey Supreme Court's first case explicitly applying a dual, or concurrent, causation rule, is essentially an isolated case.  Plaintiff does not cite to any New Jersey cases that have cited Salem Group favorably, or have applied a concurrent causation rule, and this Court, in its independent research, can find none.  See Owens, 763 A.2d at 794-95; Bastek v. Commerce and Industry Ins. Co., 2005 WL 3772423 (N.J. Super. Ct. App. Div. Feb. 22, 2006), cert. denied, 897 A.2d 1061 (N.J. 2006) (affirming lower court's decision denying coverage on the basis that commercial general liability policy's automobile exclusion barred relief for death of passenger following auto accident, despite jury's factual finding that the company was negligent in hiring driver of the tractor trailer that struck the decedent's vehicle) (citing Richards v. Princeton Ins. Co., 178 F. Supp. 2d 386 (S.D.N.Y. 2001) (applying New Jersey law and identifying Salem Group as an isolated case)); Farmers' Mut. Ins. Co. v. Allstate Ins. Co., 775 A.2d 514 (N.J. Super. Ct. App. Div. 2001) (denying coverage under homeowner's policy's automobile exclusion, in part, because the "arising out of" language applied to a boat

Salem Group is misplaced.

Salem Group involved an automobile accident where a minor consumed alcoholic beverages provided by the homeowner insured, his uncle, and was, later, injured while using the uncle's uninsured all terrain vehicle, or ATV.  607 A.2d 138; see Salem Group v. Oliver, 590 A.2d 1194, 1195 (N.J. Super. Ct. App. Div. 1991), aff'd, 607 A.2d 138 (N.J. 1992).  The plaintiff's underlying complaint alleged social host liability, against the insured, for providing alcoholic beverages to his minor nephew.  Salem Group, 607 A.2d at 139.  The insurer invoked the homeowner's insurance policy's automobile exclusion on the sole basis that a motor vehicle was involved in the accident.  Id.  A divided New Jersey Supreme Court held that the insurer had a duty to defend the insured on the social host liability count in the complaint.[8]  Id.

The Supreme Court of New Jersey affirmed the appellate division, and found that where a complaint alleges an independent, dual cause for an injury, and that cause is itself a covered risk,

---

accident where the underlying personal injury claim alleged negligence for allowing children to swim without life jackets); Conduit, 746 A. 2d 1053 (reversing lower court, rejecting reliance on Salem Group, and applying a general liability policy's automobile exclusion to a vehicular death where the underlying claim alleged negligent maintenance of a construction road).

[8]  The case was presented to the supreme court on an appeal as of right, pursuant to R.2:2-1(a), because an appellate division judge, Judge Stern, dissented from the majority's opinion obligating the insurer to defend the insured's underlying lawsuit.  Salem Group, 607 A.2d at 138. The dissenting justice in Salem Group, Justice Clifford, substantially agreeing with the objections raised by Judge Stern, wrote a sharp dissent:

> With today's decision the majority elects to march to the beat of a different-and gratingly-out-of-sync-drummer.  In adopting the dual- or concurring-causation test for finding a duty to defend under a homeowner's policy, notwithstanding a specific policy exclusion, the [c]ourt joins a small handful of states-Illinois, Minnesota, and Wisconsin-that have been lured into finding such a duty by the California Supreme Court's roundly criticized decision in State Farm Mutual Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 514 P.2d 123 (1973).

the duty to defend that risk persists.  The court noted that the insurer "may not avoid that obligation simply because the operation of [a vehicle] constitutes an additional cause of the injury."  Id. at 139.  The court looked to the nature of one of the damage claims—social host liability—and found it to be a concurrent cause.

The court in Salem Group limited its decision to a narrow set of circumstances where the underlying claim is not "intertwined" with ownership or use of a vehicle.  Id. at 139-40.  The Appellate Division in Conduit notes that the court in Salem Group endeavored to place its holding within precedent in this area:

> The [court in Salem Group] specifically distinguished cases, such as Salem Group, where the insured's liability for personal injuries can be premised on a theory *wholly independent* of negligent supervision involving an automobile (i.e. social host liability), from those cases, such as Allstate Insurance Co. v. Moraca, 244 N.J. Super. 5, 581 A.2d 510 (App. Div. 1990), where the plaintiff's theory of liability is based solely on the insured's failure to exercise sufficient control and supervision over a child in the operation of a motor vehicle.  Id. at 5, 581 A.2d 510.  In the latter cases, the [New Jersey] Supreme Court recognized the jurisdiction for excluding coverage under the homeowner's policy to the parent . . . .

Conduit, 746 A.2d at 1062 (emphasis added); see Salem Group, 607 A.2d at 139-40 (stating that the social liability host count in the complaint, unlike the underlying negligence claims in prior negligent entrustment and negligent supervision cases, was not dependent on the insured's ownership or use of the car).

The court in Conduit further explicated that the rationale undergirding the holding in Salem Group may be understood to focus on the following conceptual distinctions: One, whether a "manifest hazard [was] created by" the purportedly independent cause of action, i.e. "serving alcohol to a minor" and, two, whether "there were distinct objects of the alleged acts of negligence," i.e. "alcohol on the one hand, and the motor vehicle on the other."  Conduit, 746

14

A.2d. at 1061 (quoting Mailhiot v. Nationwide Mut. Fire. Ins. Co., 740 A.2d 360, 362 (Vt. 1999)).

Applying this conceptual framework to the instant case would not change the result. Here, the manifest hazard is either the SUV itself, or the child's ability to come within the SUV's trajectory, and there is no separate, distinct object to speak of in this case.

Although the court in Salem Group, in distinguishing the case from negligent entrustment and negligent supervision cases, referred mainly to cases where an adult permitted a minor to operate a vehicle or where an adult left a child unattended in a vehicle, the instant case falls within the latter grouping.

Plaintiff argues that Mr. Bartow's failure to supervise is a concurrent cause of Tegan's death.  Mr. Bartow's inadvertent failure to watch over Tegan may have contributed to the child's injury.  "Proximate cause [, however,]  has a different meaning in insurance cases from the meaning applied in tort actions.  The court does not concern itself with the question of culpability or why the injury occurred, but only with the nature of the injury and how it happened."  Owens, 763 A.2d at 795.  Plaintiff's State Action complaint alleges a theory that necessitates a vehicle's involvement in the occurrence.  The failure to supervise the child was not, as Plaintiff suggests, "complete" before Mr. Bartow entered the vehicle.  Rather, the failure to supervise continued and reached a critical point when Mr. Bartow failed to supervise Tegan from the car, and while Mr. Bartow moved the car.  The negligent supervision theory in Plaintiff's underlying complaint does not provide a wholly independent, discrete, act, such as service of alcohol to a minor, that would

constitute a dual cause of the loss of Tegan's young life.[9]

In further support of Plaintiff's argument for application of a concurrent causation rule, Plaintiff relies on a non-binding case decided under Illinois law, West American Ins. Co. v. Hinze, 843 F.2d 263 (7th Cir. 1988).  While the reasoning in West American appears to differ from the basis for the supreme court's holding in Salem Group, this Court finds West American also provides Plaintiff with no solace.[10]

---

[9] Homesite raises an alternative argument in support of the motion.  Homesite argues that New Jersey law does not recognize the cause of action Plaintiff alleged in the State Action. Homesite contends that a tort claim against a parent for negligently supervising his child is precluded under the doctrine of parental immunity, unless there are allegations of willful or wanton conduct.  The underlying complaint, while indicating that Mr. Bartow was reckless, does not include factual allegations that Mr. Bartow's reckless conduct rose to the level of being willful or wanton.  Under New Jersey law, a claim for negligent supervision against a parent for injuries to his own child is not a cognizable claim in the absence of factual allegations that reckless behavior constituted wanton or willful conduct.  See Buono v. Scalia, 843 A.2d 1120, 1124-28 (N.J. 2004); Thorpe v. Wiggan, 963 A.2d 375 (N.J. Super. Ct. App. Div. 2009); Foldi v. Jeffries, 461 A.2d 1145, 1153 (N.J. 1983). The duty to defend, accordingly, would also be precluded on the basis that the underlying complaint could not state a cognizable claim.

Homesite also attempts to show that Plaintiff cannot state a claim for negligent supervision in the underlying action without invoking the involvement of a motor vehicle. Unlike the social host liability theory in the underlying complaint in Salem Group, Homesite argues that in this case, if there is no vehicle, there is no injury, and, thus, no claim is stated.  See Conduit, 746 A.2d at 1060 (quoting Moraca, 581 A.2d at 515 ("[N]o harm is done until the entrustee negligently drives the vehicle . . . .")).  Defendant contends that the elements of the negligent supervision claim are not met until Tegan is harmed by the vehicle.  See Reichert v. Vegholm, 840 A.2d 942, 944 (N.J. Super. Ct. App. Div. 2004) ("[T]o prevail against a negligent defendant, plaintiff must prove not only that the defendant was negligent but also that defendant's negligence was a proximate cause of the injuries and damages suffered.").  This Court does not address this argument because the matter is decided on other grounds.

[10] Plaintiff also cites U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co., 437 N.E.2d 663 (Ill. App. Ct. 1982), a case decided under Illinois law, which is cited in West American, and a New Jersey appellate division case decided over a quarter-century before Salem Group—McDonald v. Home Ins. Co., 235 A.2d 480 (N.J. Super. Ct. App. Div. 1967). Additionally, every New Jersey court that has considered McDonald has declined to apply it to the facts of the matter before it.  The court in McDonald, in only a few paragraphs, discussed an automobile accident and held that the homeowner's policy's automobile exception did not apply

In West American, the insured drove to a storage area located near an open gate. 843 F.2d at 264. At the time, the insured was babysitting his three-year old grandson. Id. The insured left the car unattended. Id. The Seventh Circuit noted that it was "unclear whether [the child] remained in the auto at all times, or left and then returned to the unattended vehicle." Id. The car rolled into Lake Michigan and the child drowned. Id. While a state court action the child's mother initiated against the grandfather was pending, the insurer sought a declaratory judgment, in the district court, that the homeowner's insurance policy's automobile exclusion applied to the accident, and argued that Illinois law did not recognize the plaintiff's tort claim for negligent supervision. Id. at 265. The district court dismissed the case, denying the insurer's motion for judgment on the pleadings. Id.

The Seventh Circuit affirmed the district court for substantially the reasons articulated in the district court's opinion. The circuit court held that "when the underlying state court action includes a claim for negligent supervision based on allegations that death resulted from a presence in an unattended automobile, the motor vehicle exclusion clause in this case does not exclude coverage." Id. at 268. The result is that the insurer had to at least defend the state action with a reservation of rights.[11]

---

to the death of a passenger in the insured's unemancipated son's car. The plaintiff, in the underlying action, claimed that the alleged tortfeasor's parents were negligent in permitting their son to buy a car knowing his "known propensities and bad driving habits," including consuming excess alcohol before driving and disregarding the law and safety to others. Plaintiff cites McDonald for the proposition that every accident involving a motor vehicle need not trigger an automobile policy. This Court need not opine on McDonald's breadth since its inapplicability to these facts is beyond dispute.

[11] The circuit court affirmed the lower court's judgment, which had dismissed the insurer's declaratory judgment action, specifically, without prejudice to amend following a determination in the pending state court action regarding whether Illinois law has, or will,

The result in West American can be explained by the Seventh Circuit's construction of the insurance policy in light of the role of the vehicle and the nature of the injury complained of in the underlying complaint. The minor decedent in West American, after being left alone near a lake, drowned. All of the crucial facts pertinent to the plaintiff's negligent supervision claim were present, even without any mention of the vehicle. Unlike the plaintiff in either Salem Group or West American, Plaintiff's State Action complaint, here, did not, and could not, allege a divisible, concurrent, non-vehicle-related manifest hazard that would support a cause of action independently triggering a duty to defend. Mr. Bartow's failure to supervise his son did not result in any injury other than that caused by the SUV's impact on Tegan. Here, the automobile exclusion is unequivocal, clear, and undeniably applicable to this set of facts.

Homesite has met its burden to show that no ambiguity exists as to whether the policy excludes the cause of action alleged in the complaint against the insured. The insurer's duty to defend was not triggered by Plaintiff's underlying claim for negligent supervision.

Plaintiff claims that, at the very least, the automobile exclusion is ambiguous, and that in light of that purported ambiguity, this Court should construe coverage in favor of the insured's purportedly reasonable expectation that the accident is covered under the policy.[12] Even if this

recognize a tort action alleging negligent supervision.

[12] Plaintiff posits that, under New Jersey law, this Court may construe the exclusion provision so that it conforms with an insured's reasonable expectations even if the clause is not ambiguous. (Pl.'s Op. Br. 28 (citing the following three New Jersey Supreme Court cases: Sparks v. St. Pauls Ins. Co., 495 A.2d 406, 413 (N.J. 1985); Diorio v. New Jersey Mfrs. Ins. Co., 398 A.2d 1274, 1280 (N.J. 1979); and Bd. of Educ. of Borough of Florham Park v. Utica Mut. Ins. Co., 798 A.2d 605, 610 (N.J. 2002).) This Court finds that Sparks, and other cases expounding this rule of construction, are inapplicable. The court in Sparks discussed cases where the exclusion at issue was described by the deciding court as "highly technical," "difficult to understand," and "insufficiently clear," or noted that "it seems highly unlikely that the ordinary

Court found that the automobile exclusion in Homesite's policy was ambiguous, construing the policy in accordance with an average insured's objectively reasonable expectations would lead this Court to an identical conclusion.

The court in Salem Group, in considering the insured's expectations, found that, with what the court considered minor hypothetical changes in the facts, the insured could have avoided application of the automobile exclusion even without the court applying a dual causation rule.  607 A.2d at 139.  The policy at issue in that case contained distinct rules for ATVs, including provision of liability coverage if the vehicle was actually driven on the insured's property, instead of on a public road.  Id.  The court concluded that "given those possibilities and the wording of the exclusion, [the insured] could reasonably expect that the policy would cover him when he provided both the ATV and the alcoholic beverages that contributed to the causation of an accident not on [the insured's] property."  Id.  This rationale is not applicable here.

Nothing in these facts, or in the Court's experience, suggests to this Court that an average insured has a reasonable expectation that running over a child with the insured's SUV, after the insured failed to watch over the child, would fall outside the purview of the automobile exception.  One of the key dangers the average insurer wants protection from when purchasing car insurance is the possibility of running over a young child in the insured vehicle.  It is no

_____

insured would have so understood [the policy language] on his or her own reading," or that compliance with the provision would "largely nullify the insurance."  Sparks,  495 A.2d. at 412-15 (finding that the "claims made" policy at issue was "substantially different from a standard 'claims made' policy").  The court in Sparks noted that "courts have a special responsibility to prevent the marketing of policies that provide unrealistic and inadequate coverage."  495 A.2d. at 415.  Plaintiff has not made, and cannot reasonably make, such claims against Homesite's standard automobile exclusion.

wonder that school administrators utilize crossing guards at intersections, and parents strenuously teach children to observe rules of pedestrian safety. Plaintiff emphasizes that the act complained of is "the act of leaving a less than three year old child unattended and unsupervised on property." (Pl.'s Op. Br. 12). The important detail missing from Plaintiff's description of the incident is that the child is left unattended and is able to come into contact with a specific danger—the insured's moving car.[13]

The happenstance that the accident occurred at an insured location, that the insured was the driver, and that the small child was the insured homeowner's child, is not dispositive of whether the automobile exception applies. Although New Jersey courts do not apply an unyielding proscription against double coverage, the fact that automobile insurance is the more likely candidate for coverage of such risk provides appropriate support for the inverse—that the automobile exclusion was triggered by Mr. Bartow's use of the vehicle while failing to supervise Tegan, and no duty to defend attached to obligate Homesite to provide a defense to Mr. Bartow.

Homesite has met its burden to show that there is no genuine dispute as to a material fact, and that Homesite prevails as a matter of law with respect to Plaintiff's breach of a duty to defend the insured.[14]

_____

[13] Plaintiff, when defending the amount of the settlement reached between Plaintiff and Mr. Bartow in the underlying action, gives another description of Tegan's tragic death. Notably, Plaintiff does not refer to Tegan's death as having been caused by the child's father leaving him unsupervised on property. Plaintiff states that "Homesite has presented no expert evidence establishing that $350,000 is an excessive amount for the death of a three year old whose head was crushed by the wheel of an SUV." (Pl.'s Op. Br. 34.)

[14] Because there is no duty to defend, even under a reservation of rights, there can be no duty to indemnify. It follows that because Homesite has no obligation to indemnify, this Court need not make a determination as to the propriety of Plaintiff's and Mr. Bartow's settlement agreement. Plaintiff attempts to show that the settlement was made in good faith and for a

**CONCLUSION**

For the reasons stated above, Defendant Homesite's motion for summary judgment, pursuant to FED. R. CIV. P. 56(c) (Docket Entry No. 3), is granted.[15]


Dated: December 29, 2009

         S/Joseph A. Greenaway, Jr.          
         JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

reasonable amount because independent counsel advised the parties during settlement and there was a strong possibility that litigation would result in a substantial judgment against Mr. Bartow. Homesite counters that Plaintiff and Mr. Bartow will share any settlement proceeds as husband and wife.  Plaintiff's complaints in the underlying action and the instant action do not contain any facts regarding the marital status of Plaintiff and Mr. Bartow.

[15]  The remaining counts in the Complaint, the fourth and fifth counts, are no longer viable because they constitute requests for relief and, as such, are dependent on the claims alleging breach of a duty to defend.